IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

| | |
|---|---|
| **RENA HANDY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:04-0711** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and Motion for Reversal or Remand and Defendant's Motion for Judgment on the Pleadings. Plaintiff filed a Reply to the Defendant's Motion, which the Court has also considered.

The Plaintiff, Rena Handy (hereinafter referred to as "Claimant"), filed an application for SSI on December 5, 2001 (protective filing date), alleging disability as of January 1, 2001, due to heart (pacemaker), crooked spine, asthma, low blood pressure, legs swelling, weakness in the arms, vision problems, and possible lupus. (Tr. at 36, 43.) The claims were denied initially and upon reconsideration. (Tr. at 36-40, 43-45.) On November 19, 2001, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 46.) The hearing was held on August 19, 2003, before the Honorable Charles R. Boyer. (Tr. at 72-600.) By decision dated January 7, 2004, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 10-25.) The ALJ's decision became the final decision of the Commissioner on May 14, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) On July 12, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of a back disorder involving scoliosis and status-post cardiac pacemaker insertion. (Tr. at 15.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.) The ALJ then found that Claimant had a residual functional capacity for medium work which involves the performance of simple, repetitive mental work tasks. (Tr. at 22.) The ALJ found that Claimant was unable to return to her past relevant work because the mental tasks required were at times in excess of simple, repetitive mental tasks. (Tr. at 22.) The ALJ found that Claimant was not disabled using Medical-Vocational Rule 203.25 of the Medical-Vocational Guidelines ("the grids") as a framework for decision. (Tr. at 23.) The ALJ thus concluded that there were jobs existing in significant numbers in the regional and national economies which Claimant could perform. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 23-25.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v.Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on January 18, 1961, and was 42 years old at the time of the administrative hearing. (Tr. at 73, 575.) Claimant completed the tenth grade and was placed in special education classes during school. (Tr. at 575.) In the past, she worked as restaurant cook. (Tr. at 14.)

<u>The Medical Record</u>

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in failing to find that she met Listing 12.05C, Mental Retardation; and (2) the ALJ erred in failing to call a Vocational Expert ("VE") to testify at the administrative hearing and in relying upon the grids despite finding that Claimant had a non-exertional impairment. The Commissioner asserts that these arguments are without merit.

1. <u>Listing 12.05C, Mental Retardation</u>

Claimant first argues that the ALJ erred in finding that she did not meet Listing 12.05C, Mental Retardation. Claimant argues that she meets the requirements of the Listing because her October 2003 psychological evaluation revealed IQ scores of 63 verbal, 70 performance, and 63 full scale, and that she has additional severe impairments, as found by the ALJ, of status-post cardiac pacemaker insertion and a back disorder involving scoliosis. The Commissioner asserts that this argument is without merit.

"The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, see <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990); 20 C.F.R §§ 404.1525(a) 416.925(a) (2004). Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2004). Additionally, in order to meet the criteria of § 12.05C, Claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

5

imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2004).

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. Luckey v. U.S. Dept. of Health & Human Servs., 890 F.2d 666 (4th Cir. 1989) (per curiam). A "severe" impairment is one "which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2004). In Luckey, the Court ruled that:

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

Id. at 669 (internal citations omitted).

As described in the introduction to the Listing, one of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; See also, The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage intellectual quotient with related limitations in two or more of the following: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work.").[1] Also, according to the Diagnostic and Statistical Manual of Mental

---

[1] "In 1992 the American Medical Association on Mental Retardation changed the definition of mental retardation to reflect adaptation to the environment and interaction with others by a person with limited intellectual functioning. Classification based on IQ alone (mild, 52 to 68; moderate, 36 to 51, severe, 20 to 35; profound, less than 20) has been replaced to that based on level of support needed." The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

Disorders, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. Id. at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. Id. at 40. Thus, although Claimant appears to argue that Listing 12.05C is a two-part test, consisting only of the requisite IQ scores and an additional severe impairment, the Regulations make clear that it is a three-part test. The Introduction to section 12.00 of the Listings, section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; see also Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

The Commissioner asserts that section 12.05C is a three-part test, with the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period") being the threshold requirement. Although the Fourth Circuit has not addressed this issue after the amendment to the Regulations, other Circuits have held that a claimant must meet the "deficits in adaptive functioning requirement" to meet all of the criteria for Listing 12.05C. See, e.g., Higgins v. Barnhart, 288 F. Supp. 2d 811 (S.D. Tex. 2002) (claimant failed to display adaptive functioning deficits despite requisite IQ scores); Burrell v. Commissioner, 2000 WL 1827799 (6th Cir. Dec. 8, 2000) (receiving benefits under 12.05 also requires a deficit in adaptive functioning). In Lowery v. Sullivan, 979 F.2d 835,

837 (11th Cir. 1992), the Eleventh Circuit held as follows:

> Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

(internal citations omitted). This Court too, has followed this approach. See Slaughter v. Barnhart, Civil Action No. 1:03-0058, March 29, 2004 Order, Doc. No. 18 (Faber, C.J.).

Even were the Court to view Listing 12.05C as a two-part test, Claimant would not meet the requirements of the Listing because the IQ scores upon which she relies were deemed invalid by the examiner. (Tr. at 566-67.) As previously noted, Listing 12.05C requires a *valid* IQ score of 60-70. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2004). In discussing the validity of Claimant's WAIS-III, the examiner noted that Claimant gave up easily, required constant encouragement, and worked at a slow pace. (Tr. at 566.) It was noted that her mood "had a significant negative effect on performance" and the results were therefore deemed invalid due to mood. (Tr. at 566-67.) [2]

Additionally, even if Claimant's IQ scores were valid, she makes no attempt to demonstrate that she had evidence of adaptive deficits prior to age 22. Despite the fact that Claimant attended

---

[2] Claimant argues in her Reply that difficulties with her mood were due to her depression and that her depression should have been deemed a significant non-exertional impairment which would require Vocational Expert testimony. The ALJ sufficiently considered Claimant's depression and found it non-severe. (Tr. at 17-19.) The ALJ followed the special technique for evaluating mental impairments and concluded that Claimant had only mild restriction of activities of daily living; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 19.) See 20 C.F.R. § 416.920a(a) (2004) (outlining special technique). These findings are consistent with the findings of the psychological examiners who conducted the 2003 evaluation. (Tr. at 567-68.)

special education classes in school, she was able to read and write to some extent, and testified that she filled out some of her disability application forms by herself. (Tr. at 575, 590-91.) There is no diagnosis of mental retardation in the record. Psychologist Dale Rice, M.A. concluded that Claimant's October 2003 intellectual testing results were invalid due to her mood, but found that her memory and concentration were within normal limits. (Tr. at 566-67.) Claimant's judgment was likewise within normal limits. (Tr. at 565.) Thus, it appears that even if Claimant had valid IQ scores, she would not have the requisite adapative deficits in functioning to meet Listing 12.05C.

As a result of the above analysis this Court respectfully recommends that the District Court find that the ALJ's determination that Claimant did not meet or equal Listing 12.05C for mental retardation is supported by substantial evidence.

2. Failure to Call Vocational Expert

Claimant argues that the ALJ erred in failing to call a VE at the hearing and instead relying upon the grids to find that there were other jobs existing in significant numbers in the national economy which Claimant could perform, given her impairments. Claimant argues that the ALJ did not take into account her alleged non-exertional impairments. The Commissioner asserts that this argument is without merit.

As previously noted, the ALJ found that Claimant had the Residual Functional Capacity ("RFC") to perform medium work that involves the performance of simple, repetitive mental work tasks. (Tr. at 22.) The ALJ found that Claimant's back disorder involving scoliosis and her status-post cardiac pacemaker insertion were severe impairments. (Tr. at 15.) He found that the other impairments alleged, including depression, were non-severe. (Tr. at 17.) Based upon a totality of the evidence regarding Claimant's mental residual functional capacity, the ALJ found that Claimant's

ability to perform the mental tasks of unskilled work was not significantly reduced. (Tr. at 18.) He found that her impairments did not significantly reduce the occupational base of unskilled work. (Tr. at 22.) The ALJ considered Claimant's vocational profile and found that, based upon the Medical-Vocational Guidelines ("the grids"), specifically, Rule 203.25, that there were jobs, existing in significant numbers in the national economy, which the Claimant was able to perform despite her impairments. (Tr. at 23-25.)

At the fifth stage in the sequential evaluation process, after the Claimant has made a prima facie showing of a disability that prevents him from engaging in his prior work activity, the burden shifts to the Commissioner, who must show that the Claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, which job exists in the national economy. 20 C.F.R. § 404.1520(f) (2004); Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976). To answer this inquiry, the Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant, 699 F.2d at 191-92; see generally 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2004). Each grid, however, only considers the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2004).

The Regulations describe both exertional and nonexertional limitations. An exertional limitation is one which manifests itself by limitations in meeting the strength requirements of a job. See 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, § 200.00(e) (2004); Gory v. Schweiker, 712

F.2d 929, 930 (4th Cir. 1983). A nonexertional limitation is a limitation that is present regardless of whether the claimant is attempting to perform the physical requirements of a job, and would include mental retardation, mental illness, blindness, deafness, or alcoholism. Id. Nonexertional limitations are "present at all times in a claimant's life, whether during exertion or rest." Gory, 712 F.2d at 930. "When a claimant suffers from exertional limitations and the facts of his vocational profile meet all the criteria of a particular rule in the tables of Appendix 2, that rule directs the conclusion to be drawn [whether the claimant is disabled or not disabled]." Id. When a claimant has both exertional and nonexertional limitations, the grids' rules are not conclusive, and may only serve as guidelines for decision. See Gory, 712 F.2d at 931; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, § 200.00(e)(2) (2004). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990).

Social Security Ruling ("SSR") 83-14 deals with using the Medical-Vocational Guidelines as a framework for evaluating a combination of exertional and nonexertional impairments. 1983 WL 31254. SSR 83-14 states that "[n]onexertional impairments may or may not significantly narrow the range of work a person can do." Id. at *1. "After it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work . . . a further decision may be required as to how much of this potential occupational base remains, considering certain nonexertional limitations which the person may also have." Id. at *2. The Ruling provides that use of a vocational resource, such as the Dictionary of Occupational Titles or census reports "may be helpful in the evaluation of what appear to be 'obvious' cases." Id. at *4. In more complex situations, the use of such a source may be "necessary." Id. The Ruling describes more "obvious"

situations as those in which the exertional or nonexertional limitations have either very little effect on the remaining range of work such that the person comes very close to meeting a rule directing a conclusion of "not disabled," or, when the limitations have such an effect that they substantially reduce the range of work to the extent that the person comes very close to meeting a rule directing a conclusion of "disabled." SSR 83-14, *3.

SSR 83-14 states that certain non-exertional limitations, such as the inability to climb ropes, poles and scaffolding has "very little or no effect on the unskilled light occupational base." Id. at *5. The Ruling states that "relatively few jobs in the national economy require ascending or descending ladders and scaffolding." Id. at *2. Similarly, environmental restrictions likewise have no significant effect on the potential unskilled light occupational base. Id. at *5. In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit held that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker, 889 F.2d at 49. "The proper inquiry under Grant is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Id.

The grid rules reflect the number of unskilled jobs at the various exertional levels. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(b) (2004) ("[t]he existence of jobs in the national economy is reflected in the 'Decisions" shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels."). "Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." Id. Social Security Ruling ("SSR") 85-15 further provides as follows with regard to mental impairments:

12

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, *4.

As previously noted, the ALJ in the instant case found that based upon a totality of the evidence regarding Claimant's mental residual functional capacity, Claimant's ability to perform the mental tasks of unskilled work was not significantly reduced. (Tr. at 18.) He found that her impairments did not significantly reduce the occupational base of unskilled work. (Tr. at 22.) The ALJ based this finding in part upon the conclusions of psychologists Kimberly Caudell and Dale Rice in their Medical Source Statement of Ability to Do Work-Related Activities (Mental) regarding Claimant. (Tr. at 18, 569-70.) Ms. Caudell and Mr. Rice opined that Claimant had "none" to "slight" restriction in the ability to understand, remember, and carry out short, simple instructions; "moderate" restriction in the ability to interact appropriately with supervisors and co-workers; and "moderate" restriction in the ability to respond appropriately to changes in a routine work setting. (Tr. at 569-70.) "Moderate" restriction is defined as "moderate limitation . . . but still able to function satisfactorily." (Tr. at 569.) According to SSR 85-15, Claimant therefore has the ability to meet the basic mental demands of unskilled work, as the ALJ found. The potential occupational base is therefore not severely limited because there is no "substantial" loss of ability in these areas. The ALJ thus found that Claimant could perform the full range of unskilled work in the national economy, presumably within the medium, light and sedentary exertional ranges. See 20 C.F.R. § 416.967(c) (2004) ("[i]f someone can do medium work, we determine that he or she can also do sedentary and light work.")

13

The ALJ properly found Claimant "not disabled" using Rule 203.25 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.28 (2004) as a framework for decision. Rule 203.25 provides that a younger individual (age 18-44), with a limited or less educational level, whose previous work experience was unskilled or non-existent, and who is capable of performing medium work, is deemed not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 203.25 (2004). As Claimant's vocational profile met this Rule, the ALJ properly used it. Claimant was 42 years old at the time of the administrative hearing; the ALJ deemed her illiterate for purposes of his decision due to her ability to read and write only simple English; her past work was unskilled; and she was found capable of performing medium work. (Tr. at 575, 14.) The ALJ explained that Claimant's sole non-exertional limitation to simple, repetitive work tasks would not prevent Claimant from performing unskilled work. (Tr. at 18.) The use of a vocational source may have been helpful, but was not required.

The Court further notes that considering Claimant's vocational profile, but assuming that she was older and considered by the Regulations as either a person "closely approaching advanced age" or of "advanced age," she would still be considered "not disabled" under the grid rules. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 203.11, 203.18 (2004). Additionally, Claimant's argument that the other non-exertional impairments she alleged necessitated Vocational Expert testimony likewise fails. The ALJ specifically determined that Claimant's other alleged impairments, including diminished visual acuity and migraine headaches were non-severe impairments and caused no functional limitations. (Tr. at 15.) The ALJ discounted Claimant's complaints of severe pain, and there is no diagnosis of borderline intellectual functioning in the record. (Pl's Br. at 4.) (Tr. at 22, 24, 567.)

Utilization of the grids in such situations was upheld in <u>Smith v. Schweiker</u>, 719 F.2d 723, 725 (4th Cir. 1984) (per curiam) ("not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment.' The proper inquiry under <u>Grant</u> is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.") There is no evidence that this sole nonexertional limitation significantly reduced Claimant's ability to perform unskilled medium work. The reliance upon Rule 203.25 established that there were a significant number of jobs existing in the national economy which Claimant could perform.

Based upon the foregoing, it is therefore respectfully recommended that the District Court find that the ALJ's decision to rely upon the grids as a framework for decision was proper and in accordance with the applicable law and regulations, and that the ALJ's resulting conclusion that there were jobs, existing in significant numbers in the national economy, which Claimant was able to perform is proper and supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Reversal or Remand, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: July 5, 2005.

R. Clarke VanDervort
United States Magistrate Judge